

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

**SCOTT CHRISTIAN**                                                                 **PLAINTIFF**

V.                                                    CIVIL ACTION NO. 3:14-cv-057 HTW-LRA

**ILLINOIS CENTRAL RAILROAD COMPANY**                        **DEFENDANT**

### ORDER

Before the Court is the Motion for Summary Judgment filed by the Defendant Illinois Central Railroad Company [docket no. 85]. Plaintiff Scott Christian brings this litigation pursuant to the provisions of the Federal Employers' Liability Act (FELA), 45 U.S.C. § 51, *et seq*[1] and the Federal Safety Appliance Act (FSAA), 49 U.S.C.A. § 20302.[2] The Defendant herein, Illinois Central Railroad Company (hereinafter "Illinois Central") and Scott Christian (hereinafter "Christian" or "Plaintiff") once were in an employer-employee relationship in Jackson, Mississippi. That former relationship, now permanently fractured, has morphed into the

---

[1] Title 45 U.S.C. § 51 states, in its pertinent part:
  Every common carrier by railroad while engaging in commerce between any of the several States . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

[2] Title 49 U.S.C.A. § 20302 provides
**a) General.**--Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines--
**(1)** a vehicle only if it is equipped with--
**(A)** couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles;
**(B)** secure sill steps and efficient hand brakes; and
**(C)** secure ladders and running boards when required by the Secretary of Transportation, and, if ladders are required, secure handholds or grab irons on its roof at the top of each ladder;

contentious dispute now pending before this court. Illinois Central, by this motion for summary judgment, campaigns for an early termination of this lawsuit without the need for trial. Christian opposes the effort.

The critical event which birthed this dispute occurred on July 1, 2011, at Illinois Central's workplace. That event, a coupling exercise, whereby plaintiff was to hook up several railcars, occasioned an injury to plaintiff's foot. Plaintiff points his accusatory finger at Defendant's negligent failure to maintain the workplace in a reasonably safe condition, as required by the Federal Employers Liability Act, Title 45 U.S.C. § 51, *et seq*. Plaintiff also contends that Defendant is strictly liable under the FSAA. This accident would not have occurred says plaintiff, if, as required by law, these railcars would have had efficient brakes. Illinois Central has its own version of the accident and its exposure to any liability, a version which places the blame on plaintiff for the accident.

## FACTUAL BACKGROUND

Scott Christian was employed by Illinois Central as a conductor and brakeman. He began working for Illinois Central in 2006, and had worked with Kansas City Southern Railway Company for approximately eleven years before that as a conductor/trainman and engineer. Illinois Central assigned him to the North Jackson yard adjacent to Mill Street in Jackson, Mississippi.

On the morning of July 1, 2011, Plaintiff was seriously injured while conducting the coupling of four empty railcars to seven stationary railcars. The Yardmaster[3] had instructed him to make this coupling. [Docket no. 96 p. 2]. The usual method for accomplishing this act is

---

[3] According to The Bureau of Labor Statistics within the United States Department of Labor, yardmasters review train schedules and switching orders and coordinate activities of workers engaged in railroad traffic operations, such as makeup or breakup of trains and yard switching.

2

referred to as "riding coupling', "flying coupling", "riding switch" or "cowboying". The Plaintiff, in his sworn responses to Interrogatories, described the process this way:

> The general process for a flying coupling is as follows: first, a locomotive begins pushing the railcars being switched; second, the moving railcars are cut away from the locomotive when they reach the desired speed for the intended switching movement; third, an employee mounts the leading end of the moving railcars; fourth, to avoid damage to equipment and lading, the employee on the railcars slow them to an appropriate coupling speed by using the handbrake of the railcar he is riding; last the coupling takes place and the employee dismounts.
> [docket no. 102-1 at p. 4].

Scott Christian says that at the time of the accident, he was riding with both of his feet on the end brake platform of the boxcar. Illinois Central argues he must have been riding with his foot on the drawbar (a part of the coupling mechanism), because his boot became stuck in the drawbar cushion unit. Christian says he tightened the handbrake as he neared the stationary cars, but, he adds, it did not work properly, resulting in a hard impact. According to Plaintiff, the force of the impact caused his left foot to leave the brake platform. Resultantly, his foot was crushed between the horn of the coupler and the striker plate of the cushioning unit.

Plaintiff notified his supervisor, Trainmaster Blake Barnett, of his injury and, according to Plaintiff, Barnett drove him to the hospital. They were met at the hospital by Trainmaster Tucker Elkins. While still awaiting treatment at the hospital, Christian says he was ordered to write out a brief statement describing the incident. [docket no. 96 p.3].

Plaintiff contends that upon learning that the handbrake was found to be fully applied, he reported that the handbrake failed to perform properly. According to Christian, the handbrake should have stopped the four cars, given the distance to the coupling. [docket no.96]. Plaintiff alleges that the full application of the hand brake should have stopped the four boxcars, but it did not.

## ANALYSIS

The FSAA imposes strict liability on railroads for violations of the Act's safety standards. *Trinidad v. Southern Pacific Transp. Co.* 949 F.2d 187, 188 (5th Cir. 1991) (*citing Crane v. Cedar Rapids & I.C. Ry.* 395 U.S. 164, 166 (1969)). This Act though, quarrels Defendant, only applies to trains that are 'in use', while the railcars in the coupling or switching process are not in use.

The FSAA makes a distinction between 'vehicles' (railcars) and trains. Title 49 U.S.C.A. § 20302(a) (1)(B) requires a vehicle to be equipped with efficient hand brakes. Title 49 U.S.C.A. §§20302(a)(5)(A) and (B)[4] require a train to have a sufficient number of vehicles equipped with power or train brakes. *Synar v. Union Pac. R.R. Co.*, 2001 WL 1263573 at *15 (Tx. Ct.App., Oct. 17, 2001). Although the statutory language has changed, this distinction between vehicles, locomotives and trains was noted by the U.S. Supreme Court in *United States v. Erie R.R. Co.*, 237 U.S.402, 407-08 (1915). ). *See also, Brady v. Terminal R. Assn. of St. Louis*, 303 U.S. 10, 15-16 (1938).

The Defendant's reliance on *Trinidad v. Southern Pacific* for the proposition that the FSAA does not apply to switching operations is misplaced. That case involved the question of whether a train was in use. The question here is whether a vehicle was in use. The case of *Robb*

---

[4] Title 49 U.S.C.A. § 20302 provides in pertinent part:
**a) General.**--Except as provided in subsection (c) of this section and section 20303 of this title, a railroad carrier may use or allow to be used on any of its railroad lines-- ...
(5 a train only if it is equipped with—
**(A)** enough of the vehicles in the train are equipped with power or train brakes so that the engineer on the locomotive hauling the train can control the train's speed without the necessity of brake operators using the common hand brakes for that purpose; and
**(B)** at least 50 percent of the vehicles are equipped with poser or train brakes and the engineer is using the power or train brakes on those vehicles and on all other vehicles equipped with them that are associated with those vehicles in the train.

4

*v. Burlington Northern And Santa Fe Railway Co.,* 100 F.Supp.2d 867 (N.D.Ill.2000), involved a similar set of facts, and the *Robb* court considered and rejected an argument similar to the one advanced by the Defendant. The switching exclusion applicable to FSAA's power brake requirement for 'trains' does not extend to the hand brake requirement. The *Robb* court went on to say that a narrower interpretation would defeat the purpose of the statute, which is to protect workers injured while using the handbrake during routine switching operations. *Robb v. Burlington Northern and Sante Fe Railway Co.,* 100 F. Supp.2d 867 (N.D. Ill 2000) (followed in *Underhill v. CSX Transportation, Inc.). See, Hardlannert v. Illinois Central R.R. Co.,* 928 N.E.2d 172 (App. Ct. Ill. 2010) (railcars are "in use" during switching operations under the FSAA).

This Court is of the opinion that the Plaintiff's interpretation and the one followed in *Robb* is the correct interpretation. The provisions of the FSAA that apply to vehicles apply to switching operations, such as those in which Plaintiff was engaging at the time of his injury. *Robb v Burlington Northern and Sante Fe Ry. Co.,* 100 F. Supp.2d 867 (N.D. Ill. 2000)

This court is persuaded that Plaintiff's factual allegations herein are sufficient to create a legitimate question as to whether the hand brake did not function properly. This Court cannot say as a matter of law that the Plaintiff's claim fails. Similarly, this court cannot say that Plaintiff's claims under FELA fail, claims whereby plaintiff contends that the deficient braking situation led to an unsafe workplace.

Material issues of fact permeate this lawsuit which must be decided by a trier of fact. The Defendant, for instance, disputes that the hand brake was defective or failed to function properly. Again, this is a material issue of fact to be decided by the fact finder.

In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the nonmoving party. *Reeves v. Sanderson Plumbing Prods. Inc.,* 530 U.S. 133, 150

(2000). Here, this Court cannot say that a reasonable jury could not return a verdict for the Plaintiff. *Anderson v. Liberty Lobby, Inc.,* 477 242, 248 (1986). Summary judgment is appropriate only if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Wyatt v. Hunt Plywood Co. Inc.,* 297 F.3d 405 (2002). This lawsuit certainly features disputed issues of material facts; therefore, this court must deny the Defendant's motion for Summary Judgment **[docket no. 85]**.

In an earlier order, this court addressed various motions in limine filed in this litigation [docket no. 123]. The prior order filed on October 3, 2016, [docket no. 124] and this order both observed the presence of material issues of disputed facts in this litigation. The court was in the process of completing this order when the court entered the first order which this court expected to file on the same day as the first, and the order on the in limine motions immediately thereafter. Now that the court has filed this order **[docket no.85]**, the parties should read all three together as the parties approach the trial date.

SO ORDERED, this 9th day of October, 2016.

*Henry T. Wingate*
UNITED STATES DISTRICT COURT JUDGE